Henry BLAIR

v.

PHILADELPHIA HOUSING AUTHORITY.

Civ. A. No. 82–2466.

United States District Court,
E.D. Pennsylvania.

May 22, 1985.

David M. Still, Philadelphia, Pa., for plaintiff.

James N. Penny, Jr. and Richard Geschke, Jr., Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for defendant.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

SHAPIRO, District Judge.

Plaintiff, Henry Blair, brings this civil rights action against his former employer, the Philadelphia Housing Authority ("PHA"), under §§ 1981 and 1983 of the Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981 and 1983. Plaintiff, an adult Black male, claims damages for wrongful termination of employment and failure to rehire because of defendant's alleged racially discriminatory practices and policies. This matter was heard by the court sitting without a jury. Upon consideration of the evidence and the arguments and submissions of counsel, the court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. PHA is a corporate and political body, created and operating under the Pennsylvania Housing Authorities Law of May 28, 1937, P.L. 955, as amended 35 P.S. § 1541 *et seq.*

2. PHA is an employer within the meaning of 42 U.S.C. § 2000e(b); it is engaged in an industry affecting commerce and employs 15 or more persons.

3. Plaintiff was first employed by PHA in 1971 as a laborer.

4. Plaintiff was promoted to the position of maintenance aide in 1975, which position he held until his termination in 1980. However, he was earning mechanics pay. He worked in the Scattered Sites Department at the time of the relevant events.

5. On or about May 14, 1980, plaintiff was with his co-worker, Stanley Spratley. Their job was to repair water meters in PHA residences. They were not authorized to go into any unit without a work slip ("Service Request"). They entered a non-PHA residence at 1919 North 19th Street, Philadelphia, Pennsylvania for which they did not have a work slip and detached a water meter. The tenant of the residence witnessed the incident and reported it to PHA; the supervisor believed she had told them it was not a PHA unit. Plaintiff claimed he was asked to enter to repair the meter and so took off the meter, but then left it there because it was not a PHA house.

6. Plaintiff consistently said Spratley did not enter the house with him. Blair and Spratley originally admitted to Superintendent Mascantonio the meter was taken from 1919 North 19th Street and sold for scrap but consistently denied removing meters from other units. The credible evidence supports the PHA position that Blair detached and removed the meter without authority, that Spratley was with him but less involved and that Blair replaced the meter probably on May 18 but certainly before May 23, 1980.

7. Plaintiff and co-worker Spratley, both Black, were fired on June 6, 1980 for stealing a water meter from a non-PHA home in order to sell it for scrap.

8. The PHA disciplinary guidelines are set out in the Standard Guide of Disciplinary Penalties, P-2. Suspension or discharge, as determined by the severity of the offense, is the appropriate discipline for destruction, abuse or misuse of PHA property; actual or attempted theft of PHA property; use of PHA authority, equipment, tools, vehicles for personal gain; or intentional misstatement or concealment of material fact in connection with employ-

ment, or any investigation, inquiry or other proceeding.

9. PHA employment was governed by the Collective Bargaining Agreement entered into by PHA and Local 332, Building and Construction Trades Council of Philadelphia and Vicinity, of which plaintiff was a member.

10. Plaintiff's termination was preceded by an investigation by PHA and a grievance hearing held in accordance with the Collective Bargaining Agreement. Plaintiff and his Union representative were present at the hearing and presented evidence.

11. As a result of the evidence presented at the hearing, PHA's Personnel Director William A. Gaughan, sustained plaintiff's termination.

12. The Collective Bargaining Agreement contained a grievance procedure in paragraph 10(j) with arbitration the fourth and final step if the grievance were not satisfactorily adjusted; either party to the contract might submit the case to arbitration. Paragraph 18 provided that if any dispute or grievance of an employee covered by the Agreement were submitted to arbitration, the decision of the arbitrator would be final and binding.

13. The Union declined to pursue plaintiff's grievance to arbitration.

14. On or about February, 1981, plaintiff and his co-worker Spratley each filed charges with the Equal Employment Opportunity Commission ("EEOC"). The charges alleged discriminatory termination on account of race because White employees of PHA accused of similar violations were suspended rather than terminated.

15. The EEOC found that there was no reasonable cause to believe that plaintiff's termination was the result of discrimination because of his race and on May 13, 1981 issued its statutory notice of plaintiff's right to sue in federal district court.

16. The EEOC did find reasonable cause to believe there was racial discrimination in Spratley's case. As a result of conciliation and settlement with the EEOC,

Spratley was later reinstated by PHA; plaintiff was never reinstated.

17. White PHA employees similarly situated to plaintiff were discharged for similar conduct.

18. Disciplinary action was taken by PHA against Mario Salveggi, Danny Damiano, Vincent Latini, and Nicholas DeNicola, all White employees accused of stealing PHA equipment.

19. PHA has consistently terminated non-Black employees who were involved in the theft of PHA materials.

20. Reinstatement of these terminated employees, including Black employee Spratley, resulted only from third-party intervention, either from the Union or the EEOC.

21. Neither the Union nor the EEOC intervened on behalf of Blair.

22. Plaintiff has introduced no evidence that other Black employees have been terminated for racial reasons and has introduced no direct evidence of intentional discrimination by PHA against him.

23. PHA discharged plaintiff because of the water meter incident and did not discharge him on account of his race.

24. On this record, PHA did not engage in a pattern or practice of determining discipline on the basis of race.

25. On June 7, 1982, plaintiff instituted this action in the United States District Court for the Eastern District of Pennsylvania against PHA and five supervisory employees. In his complaint, plaintiff alleged that PHA's racially discriminatory practices violated: a) Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e); b) 42 U.S.C. §§ 1981 and 1983; and c) 42 U.S.C. § 1985. Count IV of the complaint was a pendent state claim for defamation and intentional interference with contractual relations.

26. The court has dismissed plaintiff's complaint against the individual employees for failure to serve them properly, granted defendant's motion for summary judgment as to Counts I and III and transferred Count IV to state court.

## DISCUSSION

█ Plaintiff's remaining claim is that PHA enforced its disciplinary rules in a racially discriminatory manner, in violation of 42 U.S.C. §§ 1981 and 1983. Section 1981 affords a federal remedy against intentional racial discrimination in making and enforcing contracts and in securing "equal benefit of all laws and proceedings." 42 U.C.S. § 1981; *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). Since § 1981 can only be violated by purposeful discrimination, plaintiff must prove actual discriminatory intent to establish an employment discrimination claim under § 1981. *General Building Contractors v. Pennsylvania, et al.*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982); *Goodman v. Lukens Steel Co.*, 580 F.Supp. 1114 (E.D.Pa.1984). In many cases, it is rare to find direct evidence of discriminatory intent and purposeful discrimination must instead be inferred from the totality of the circumstances. *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Such factors as departure from normal procedures, history of discriminatory actions, and disparate impact upon a racial minority can be considered as evidence of discriminatory intent. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Croker v. Boeing Co.*, 662 F.2d 975 (3d Cir.1981).

Plaintiff alleges that PHA intentionally discriminated against him and should be held liable under § 1981 for the racially motivated acts of its supervisory employees on a theory of *respondeat superior*. In *Mahone v. Waddle*, 564 F.2d 1018 (3d Cir.1977), *cert. denied*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978), the Court of Appeals found that allegations of racially motivated misconduct on the part of two Pittsburgh policemen stated a cause of action against the city itself under § 1981. Even though the city then had immunity under § 1983, *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the court held that the unique purpose and history of § 1981 permitted the imposition of *respondeat superior* under § 1981. The court viewed the broad language of § 1981 and its original purpose of implementing the Thirteenth Amendment's mandate to remove the vestiges of slavery as evidence of Congressional intent that municipalities be subject to suit under the statute.

In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court, reconsidering municipal immunity under § 1983, overruled *Monroe*. *Monell* held that a municipality cannot be held vicariously liable for the actions of its agents under a theory of *respondeat superior* but can be liable directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to an official governmental custom, policy or practice of the governmental unit itself.

█ Although *Mahone* was decided prior to *Monell*, the vitality of *Mahone's* holding that municipalities are vicariously liable for intentionally discriminatory acts of their employees under § 1981 was not impaired by the Supreme Court's decision in *Monell*. *Miller v. Bank of America*, 600 F.2d 211 (9th Cir.1979); *Jones v. City of Philadelphia*, 491 F.Supp. 284 (E.D.Pa.1980); *Pennsylvania v. Local 542, International Union of Operating Engineers*, 469 F.Supp. 329 (E.D.Pa.1978); *Preston v. City of York*, 452 F.Supp. 52 (M.D.Pa.1978). In *General Building Contractors Assoc. v. Pennsylvania, et al.*, 458 U.S. 375, 102 S.Ct. 3141, 71 L.Ed.2d 835 (1982), the Supreme Court reaffirmed that § 1981 requires purposeful discrimination and assumed without deciding that *respondeat superior* is generally applicable to suits under § 1981 where there exists an agency or employment relationship. This court accepts that PHA as a body "corporate and politic" can be vicariously liable under § 1981, but finds that plaintiff in this case has failed to prove his right to recover under § 1981.

The burden of proof for employment discrimination claims brought under § 1981 is

similar to that for claims under Title VII, *Lewis v. University of Pittsburgh,* 725 F.2d 910 (3d Cir.1983), except plaintiff must establish discriminatory intent in his *prima facie* case (under Title VII, plaintiff need only show a discriminatory outcome or impact). Once plaintiff has made a *prima facie* case, the burden shifts to defendant to articulate a non-discriminatory reason for the actions complained of; if so articulated, then plaintiff must show that defendant's reason is pretextual. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Goodman v. Lukens Steel Co.,* 580 F.Supp. 1114 (E.D.Pa.1984). Although the burden of production shifts from plaintiff to defendant and back again, the burden of persuading the trier of fact that defendant intentionally discriminated remains with the plaintiff throughout.

Plaintiff sought to establish a *prima facie* case of intentional racial discrimination by showing that he was Black, his employer terminated him for stealing a water meter, and he was treated more harshly than White employees accused of the same violation. But plaintiff failed to prove both that White employees who committed violations similar to plaintiff's were disciplined less severely and that his own termination was due to his race.

In an attempt to prove that he was treated differently, plaintiff claimed that seven White PHA employees were caught stealing PHA equipment on prior occasions and that they were not terminated as was plaintiff. Plaintiff submitted documentary evidence regarding four of the seven disciplinary actions; these involved four White male PHA employees: Vincent Latini, Mario Salveggi, Nicholas DeNicola, and Daniel Damiano. The evidence of the remaining three incidents was neither supported by exhibits nor convincing.

Two eyewitnesses had observed Salveggi and Latini and reported questionable activities to PHA. Upon investigation, PHA found that materials were missing and Salveggi and Latini could not account for the missing equipment. PHA fired them for theft of its materials. The Union proceeded to arbitration with Salveggi's grievance which resulted in an award in favor of Salveggi; he was later reinstated without back pay in accordance with the award. (Ex. D–5). The Union did not pursue the grievance procedure in Latini's case and he was not rehired. (Ex. D–6).

In 1980, PHA investigated alleged irregularities in the Scattered Site Maintenance operation. The investigation revealed discrepancies between the amount of PHA materials withdrawn by Damiano and DeNicola for use and the amount of materials actually installed; as a result, Damiano and DeNicola were fired. (Ex. D–27). The Union advised PHA of its intent to submit the dismissal of both Damiano and DeNicola to arbitration. (Ex. D–8). There were no witnesses in the cases and PHA felt the evidence against the employees was equivocal, so PHA agreed to a settlement allowing both employees to return to work without loss of seniority but with transfer and five-week suspensions without pay. (Ex. P–10, D–11).

PHA had a strong case against Blair. The tenant of the apartment saw him enter the non-PHA unit and disconnect the water meter and Blair admitted to Superintendent Richard Masciantonio and Henry Watkins of the Security Division that he took a water meter from 1919 North 19th Street. Furthermore, plaintiff had a history of violating PHA rules. In 1977 and again in 1978, plaintiff had been advised by his manager that he was abusing sick leave privileges. (Ex. D–24 and D–25).

Stanley Spratley, also a Black employee, was fired for the same incident as plaintiff. The EEOC found reasonable cause to believe there was racial discrimination as to him and he was later rehired as a result of its conciliation efforts. The fact that the EEOC found no reasonable cause to believe there was discrimination, racial or otherwise, against Blair is entitled to some probative effect. *Chandler v. Roudebush,* 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 1961 n. 39, 48 L.Ed.2d 416 (1976).

Like Latini, Salveggi, Damiano, DeNicola and Spratley, plaintiff was fired for theft of materials. From the evidence, it is clear that PHA terminated all employees who committed offenses similar to plaintiff's. There is simply no evidence that PHA condoned theft by White employees. Employees have been reinstated only because of third-party intervention, as a result of arbitration, instituted by the Union under the Collective Bargaining Agreement, or EEOC intercession on behalf of the wronged employee. In plaintiff's case, neither the Union nor the EEOC interceded on his behalf so plaintiff's termination was undisturbed. Race played no part in PHA's firing and rehiring of employees. Both Black and White employees were terminated for theft; both Black and White employees were reinstated only on the intervention of a third-party.

On the record as a whole, plaintiff has failed to prove that defendant intentionally disciplined him in a discriminatory manner because he was Black. Neither has plaintiff shown circumstances from which the court could infer discriminatory motive from differences in the treatment of White and Black employees.

Plaintiff might have had a complaint against his Union because of the Union's perfunctory handling of the grievance or failure to proceed to arbitration on behalf of plaintiff. If this were due to racial discrimination or conduct otherwise arbitrary and capricious, plaintiff could have brought an action against the Union for breach of its duty of fair representation in mishandling his grievance or failing to take it to arbitration. *Vaca v. Sipes*, 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967). From the evidence it would appear that the Union did not represent Black employees as effectively as White employees. (For example, in addition to verbal evidence the documentary evidence suggests a disparity between the Union's failure to require arbitration of Blair's grievance in the spring of 1980 with its more vigorous defense of the conduct of Damiano and DeNicola in the summer of 1980 (Ex. P–10) and its pursuit to arbitration of the claim of

Salveggi that same fall (Ex. P–5, P–7, D–5); *cf.* Latini who was fired, did not arbitrate and was not reinstated.) If an action against the Union had been timely filed, such evidence might have supported recovery of damages against the Union for actions discriminating against a Black member. But the six months limitation period in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), governs claims against the Union and plaintiff was already barred from proceeding against the Union when this action was filed. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

Plaintiff also asserts a claim against PHA under § 1983. In order to maintain a valid 42 U.S.C. § 1983 action, two prerequisites must be alleged and proved. First, the conduct complained of must have been committed by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Parks v. "Mr. Ford"*, 556 F.2d 132 (3d Cir.1977). Second, the conduct must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Where the defendant is a governmental entity, plaintiff must prove that his rights were denied by a custom, pattern or practice of racially discriminatory treatment by defendant.

■ The first prerequisite was met because we have already determined that PHA is a state agency. However, plaintiff has failed to prove any pattern, policy or custom of discrimination for reasons of race under § 1983. The only Black employee mentioned in the case, aside from plaintiff, was terminated and reinstated in the same manner as White employees. Thus, plaintiff's only evidence of PHA's discriminatory custom was his own termination. One incident is insufficient to establish a custom, pattern or practice. Plaintiff has

failed to sustain his burden of proof as to § 1983.

To the extent that findings of fact are made in this discussion which are not enumerated under the section so denominated, they are to be considered as if they were.

### CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and subject matter of this action, pursuant to 28 U.S.C. § 1331.

2. PHA is an employer within the meaning of 42 U.S.C. § 2000e(b).

3. Plaintiff is a Black man; his termination by PHA and its failure to rehire him were "adverse." But plaintiff failed to prove that the adverse action occurred because of his race.

4. Plaintiff has carried his burden of proving neither intentional racial discrimination nor a racially discriminatory pattern, practice or policy of defendant by a preponderance of the evidence. Thus, his causes of action under both 42 U.S.C. §§ 1981 and 1983 have not been sustained.

5. Judgment for defendant will be entered accordingly.